```
               UNITED STATES DISTRICT COURT FOR THE
                     DISTRICT OF NEW HAMPSHIRE
```

Robert McNamara

    v.                                    Civil No. 08-cv-348-JD
                                                          Opinion No. 2010 DNH 020

City of Nashua

O R D E R

    Robert McNamara brought a claim under 42 U.S.C. § 1983, alleging that the City of Nashua violated his Fourteenth Amendment rights (Count I).  McNamara also alleged breach of contract (Count II), breach of the covenant of good faith and fair dealing (Count III), and fraudulent inducement (Count IV). Nashua now moves for summary judgment on all counts, and moves to strike Exhibit B, submitted by McNamara in support of his objection to the motion for summary judgment.

I.   Motion to Strike

    Nashua moves to strike Exhibit B from McNamara's objection, on the ground that it does not meet the requirements of Federal Rule of Procedure 56(e)(1).  In response, McNamara submitted an affidavit based on his personal knowledge, to which he attached the exhibit in question.  Because McNamara cured the defect, Nashua's motion to strike is denied.

II.  Subject Matter Jurisdiction

McNamara's complaint does not comply with Rule 8(a)(1), which requires "a short and plain statement of the grounds for the court's jurisdiction."  On the civil cover sheet that he filed with his complaint, however, McNamara indicated that he intended to invoke the court's federal jurisdiction based on the parties' diversity of citizenship and a demand of $100,000.  See 28 U.S.C. § 1332.

Nashua suggests in its motion for summary judgment that the court's subject matter jurisdiction is based only on the presence of a federal question and supplemental jurisdiction over state law claims, pursuant to 28 U.S.C. §§ 1331 and 1367.  See Deft.'s Memo. at n.1.  Nashua requests that the court rule on McNamara's three state law claims "pursuant to 28 U.S.C. § 1367," implying that there is no other basis for federal jurisdiction over those claims.  McNamara does not address the jurisdictional question in his objection or his surreply.

Based on a review of the documents filed in this case, the court is satisfied that the case falls within its diversity jurisdiction, as McNamara's civil cover sheet suggests.  Therefore, it is proper to address all four of McNamara's claims on summary judgment because jurisdiction over the state law claims is not discretionary.

III. <u>Motion for Summary Judgment</u>

McNamara brings four counts against Nashua: one claim under 42 U.S.C. § 1983 alleging a Fourteenth Amendment violation (Count I), and state law claims for breach of contract (Count II), breach of the covenant of good faith and fair dealing (Count III), and fraudulent inducement (Count IV).  Nashua moves for summary judgment on all four claims, contending that they are barred by the statute of limitations and, alternatively, that the claims are barred by the terms of a release McNamara signed, that the complaint fails to meet the pleading requirements of Federal Rule of Civil Procedure 8(a)(2), and that the claims fail on the merits.  Because the statute of limitations bars McNamara's claims, it is unnecessary to reach the other grounds raised in support of the summary judgment motion.

As part of its memorandum, Nashua filed a "Statement of Undisputed Facts," supported by appropriate record citations, as required by Local Rule 7.2(b)(1).  <u>See</u> Deft.'s Memo. at 2-7. McNamara filed a "Response to Defendant's Statement of Material Facts Not in Dispute," in which he gave responses such as "Agreed," "Plaintiff states that the document speaks for itself," and "Plaintiff is without sufficient information to admit or deny the allegations."  He also incorporated "Additional Material Facts in Dispute" in his objection, which he supported by

reference to his answers to Nashua's interrogatories, a letter, and an affidavit from his current attorney, to which two additional letters were attached. See Deft.'s Memo. at 2-3, Exhs. A & B, O'Brien Aff.

McNamara's "Response" does not comply with Federal Rule of Civil Procedure 56(e)(2), which says that "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must--by affidavits or as otherwise provided in this rule--set out specific facts showing a genuine issue for trial." See also Local Rule 7.2(b)(2). The Additional Material Facts, as cured by McNamara's objection to the motion to strike and its accompanying affidavit, complies with Rule 56(e)(2), but does not directly deny many of the facts in Nashua's Statement of Undisputed Facts. To the extent McNamara failed to deny any statement in Nashua's motion that was properly supported by the attached affidavit and exhibits, those statements are deemed admitted for purposes of summary judgment. See Fed. R. Civ. P. 56(e)(2); LR 7.2(b)(2). Therefore, the facts are taken from the portions of Nashua's Statement of Undisputed Facts and McNamara's Additional Material Facts in Dispute that were properly supported.

Background

On August 25, 2000, following an administrative investigation into a complaint of sexual harassment, McNamara was suspended without pay from the Nashua Fire Department. In October of 2000, the Board of Fire Commissioners voted to terminate McNamara's employment.

Although the dispute was initially scheduled for arbitration in April of 2001, the parties reached a settlement, memorialized in a March 29, 2001, Stipulation, which provided that McNamara would "resign effective February 4, 2001," that he would "be made whole, up and to and including February 4, 2001," and that Nashua and the Board of Fire Commissioners would "coordinate [their] activities with Mr. McNamara in order to preserve his rights with the New Hampshire Retirement System and any other benefit he is entitled to under contract, law or by any other source." Deft.'s Memo., Exh. A, Attachment 8 ("Stipulation"). McNamara and Nashua were also required to release any other claims arising from McNamara's employment with Nashua. The Stipulation was signed by John Krupski, an attorney for Local 789, the union to which McNamara belonged; Stephen Bennett, the attorney for Nashua; Robert McNamara; Edward Richards, an attorney for McNamara; and

David Lavoie, the chairman of the Nashua Board of Fire Commissioners.[1]

In accordance with the agreement, Nashua gave McNamara a lump sum settlement check, dated April 5, 2001, in the amount of $20,272.12. This represented McNamara's wages, accumulated sick and vacation time, and longevity payment for the period from August 25, 2000 (the date of his suspension) through February 4, 2001 (the effective date of his resignation), less taxes and other deductions. Nashua sent a signed General Release of claims to McNamara in April, 2001. McNamara signed and returned his General Release to Nashua in May, 2001.

In July, 2001, Attorney Krupski contacted Attorney Bennett to request that Nashua help McNamara obtain a medical benefits supplement from the New Hampshire Retirement System. According

---

[1] McNamara does not dispute that these were the actual terms of the Stipulation. He does state, in his affidavit, that on March 23, 2001, another attorney "advised [him] that under the proposal, the City would pay [McNamara] back pay from the date [he] was suspended without pay to whatever date the agreement [was] signed," that "[McNamara] would then be placed upon administrative leave . . . until such time as [he] made 30 years of service," and that he "would be paid on a regular bi-weekly or weekly basis for the next four years." Pl.'s Obj. to Motion to Strike, Exh. A at ¶ 5. McNamara also states that Attorney Bennett told him, just before he signed the Stipulation, that he "would continue to receive retroactive pay until [he] received his first retirement check," and that he had to sign the Stipulation at that time or lose his pension. Id. at ¶ 11.

to Krupski, this could be accomplished if Nashua "categorizes the lump sum payment made to Mr. McNamara as prospective as opposed to retrospective," an action Krupski understood that Nashua was willing to take "as long as there is no adverse impact upon the City of Nashua."  Deft.'s Memo., Exh. A, Attachment 14.  On October 11, 2001, Nashua sent a letter to the New Hampshire Retirement System explaining the breakdown of the lump sum payment and stating that McNamara's last date of employment was February 4, 2001.

As part of the effort to obtain his benefits, McNamara signed an amendment to the March 29 Stipulation that incorporated two changes: the parties agreed "to change the retirement effective date in paragraph 2 to June 20, 2001" and they agreed "that payments made to Lt. McNamara under the stipulation cover the time period during the three weeks preceding June 20, 2001." Deft.'s Memo., Exh. A, Attachment 19 ("Amendment").  Other than those two changes, "the Stipulation remain[ed] in full force and effect."  Id.  The Amendment was signed by McNamara; Francis Holland, an attorney for McNamara; Attorney Bennett; David Lavoie; and Richard Molan, an attorney for Local 789.  Attorney Holland forwarded the Amendment to the New Hampshire Retirement System on November 8, 2001, "to correct the timing and nature of Mr. McNamara's retirement benefits."  Deft.'s Memo., Exh. A,

Attachment 20.  Copies of that correspondence were sent to McNamara, Attorney Bennett, and Attorney Molan.  Shortly thereafter, on November 17, 2001, Nashua sent a further clarification to the New Hampshire Retirement System explaining the breakdown of the lump sum payment and stating that McNamara's last date of employment was June 20, 2001.

McNamara alleges in his complaint that Nashua failed to credit his in-service time from August 25, 2000, through the date of his retirement, and that this has caused the amount of his monthly pension to be too low.  Compl. at ¶¶ 9, 14.  In his objection, McNamara states that his understanding, "from the representations of Attorney Bennett," was that "he would be made 'whole' up until the time he began receiving his first retirement check," which can only be accomplished by "crediting him with in service time from August 25, 2000 until August 1, 2001."  Pl.'s Memo. at 2-3.  He does not dispute, however, that his "retirement effective date," according to the Amendment, was June 20, 2001.  See Amendment at ¶ 1.  From McNamara's Additional Material Facts, it appears that he "began receiving his first retirement check" in August of 2001.[2]

---

[2]McNamara's complaint states that "[t]he City of Nashua, in order to make Mr. McNamara whole, had promised to pay Mr. McNamara's wages until he received his first retirement check in August, 2001."  Compl. at ¶ 10A (emphasis added).

On March 14, 2006, McNamara's attorney sent a letter to the New Hampshire Retirement System stating that McNamara believed his monthly benefits were too low, and requesting that a representative contact her regarding the issue. On May 31, 2006, McNamara's attorney wrote again, stating that they had reviewed the New Hampshire Retirement System's file for McNamara and concluded that his monthly benefit was too low, in part because "Mr. McNamara was not credited for some of the wages earned during the second half of 2000 up through Mr. McNamara's date of retirement." Pl.'s Memo., O'Brien Aff., Exh. 2. McNamara brought this case in August, 2008.

## Standard of Review

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment must first demonstrate the absence of a genuine issue of material fact in the record. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A party opposing a properly supported motion for summary judgment must present competent evidence of record that shows a genuine issue for trial. See Anderson v. Liberty Lobby, Inc.,

477 U.S. 242, 256 (1986).  All reasonable inferences and all credibility issues are resolved in favor of the nonmoving party. See id. at 255.

## Discussion

A.   Statutes of Limitations

The claim in Count I is brought under 42 U.S.C. § 1983.  The state statute of limitations applicable to personal injury and tort actions provides the limitations period for § 1983 claims. Wallace v. Kato, 549 U.S. 384, 387 (2007).  In New Hampshire, that statute is New Hampshire Revised Statutes Annotated ("RSA") § 508:4, which provides a limitations period of three years.  See Therrien v. Sullivan, 153 N.H. 211, 213 (2006) ("RSA 508:4 . . . establishes a three-year limitations period for all personal injury actions.").  The accrual date of a § 1983 claim, however, "is a question of federal law that is not resolved by reference to state law."  Wallace, 549 U.S. at 388 (emphasis in original). Under federal law, "[t]he limitations period begins to run when the plaintiff knows or has reason to know of the injury which is the basis for his claim."  Santana-Castro v. Toledo-Dávila, 579 F.3d 109, 114 (1st Cir. 2009).

RSA 508:4 is also the statute of limitations governing counts II (breach of contract), III (breach of the covenant of

good faith and fair dealing), and IV (fraudulent inducement). It provides that

> all personal actions . . . may be brought only within 3 years of the act or omission complained of, except that when the injury and its causal relationship to the act or omission were not discovered and could not reasonably have been discovered at the time of the act or omission, the action shall be commenced within 3 years of the time the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, the injury and its causal relationship to the act or omission complained of.

RSA 508:4(I) (2009). See also State v. Lake Winnipesaukee Resort, LLC, 159 N.H. 42, 48 (2009) (explaining that RSA 508:4(I) applies to actions "to recover for personal injury, legal malpractice, and contract") (citations omitted); A&B Lumber Co. v. Vrusho, 151 N.H. 754, 756 (2005) ("Under New Hampshire law, a contract claim must be brought within three years of the contract's breach.").

### 1. Section 1983 Claim

In McNamara's § 1983 claim, he complains that Nashua "made affirmative representations to [him] that justifiably induced him from taking available actions to protect himself and proceeding with the scheduled arbitration." Compl. at ¶ 18. He also alleges that Nashua "violated [his] civil rights by coercing him

to sign the Release, depriving him of his full pension." Id. at
¶ 20.  Nashua contends that McNamara's § 1983 claim accrued in
2001, when the events pertaining to arbitration, settlement, and
signing his Release occurred.  As a result, Nashua argues, the
claim is time-barred.

McNamara does not address his § 1983 claim separately for
purposes of opposing summary judgment based on the statute of
limitations.  Instead, McNamara states that the case arises out
of a breach of contract and argues generally that because his
claim involves ongoing monthly pension payments, the installment
contract rule applies, and therefore a new limitations period
begins when each installment is due.  He also mentions that the
statute of limitations is tolled where the defendant has
fraudulently concealed from the plaintiff the very fact that he
has a cause of action.  He does not explain how either theory
would apply to his § 1983 procedural due process claim, and no
connection is apparent.

McNamara alleges that Nashua made representations to him
that kept him from proceeding with arbitration, which would have
occurred in April of 2001.  He also alleges civil rights
violations that caused him to sign his Release in May, 2001.
Even if the alleged coercive effect of Nashua's actions might not
have been reasonably comprehended immediately, McNamara had

reason to know of it when he received his first retirement check in August, 2001, and saw that it was for a smaller amount than he had anticipated. At the very latest, McNamara had reason to know of the alleged injury in November, 2001, when both his attorney and Nashua informed the New Hampshire Retirement System that McNamara's last date of employment was June 20, 2001, not August 1, 2001. McNamara did not sue until August, 2008, however, which was several years beyond the expiration of the three-year limitations period. Therefore, his § 1983 claim is time-barred.

    2.    <u>Breach of Contract</u>

In his complaint, McNamara alleges that Nashua breached the Stipulation by not making him whole. He asserts that he can only be made whole if he is credited for in-service time from August 25, 2000, to August 1, 2001. Compl. at ¶ 14. Nashua argues that the claim is untimely because if there had been any breach, McNamara would have known of it when he received the lump sum check in 2001. When the complaint was filed in August of 2008, Nashua contends, the three-year limitations period had long passed.

McNamara counters that the installment contract rule applies here, and that it causes a new limitations period to begin as each installment becomes due. In the alternative, McNamara

argues, the limitations period was tolled because Nashua fraudulently concealed from him the fact that he had a cause of action.

McNamara's reliance on the installment contract rule is misplaced. Under that rule, "when an obligation is to be paid in installments the statute of limitations runs only against each installment as it becomes due." General Theraphysical, Inc. v. Dupuis, 118 N.H. 277, 279 (1978). Here, the installments at issue -- McNamara's ongoing retirement benefits payments -- are not Nashua's obligation, either under the Stipulation or otherwise. Nashua's duty to pay, according to the Stipulation as modified by the Amendment, was limited to making McNamara "whole, up and to and including February 4, 2001." The parties agree that McNamara was paid a net amount of $20,272.12 as one lump sum in 2001, which the Amendment states was meant to "cover the time period during the three weeks preceding June 20, 2001." Nashua had no ongoing obligation to pay McNamara, and therefore the Stipulation is not an installment contract.[3]

---

[3] McNamara alleges that Nashua breached paragraph 3 of the Stipulation, regarding making him "whole." He does not allege in his complaint that Nashua violated paragraph 5, requiring "coordinat[ion of] its activities with Mr. McNamara in order to preserve his rights with the New Hampshire Retirement System." Even if he had, the obligation to coordinate and preserve rights does not turn the Stipulation into an installment contract susceptible to the installment contract rule. See Metromedia Co.

McNamara provides no evidence in support of his assertion that Nashua concealed his cause of action from him.  Moreover, his theory is directly contradicted by the undisputed facts.  McNamara signed the Stipulation in March of 2001 and the Amendment in October of 2001.  Neither document mentioned August, 2001, in any respect.

Rather, the Stipulation states that McNamara would be "made whole" for the time up to and including February 4, 2001.  This date was not changed in the Amendment.  McNamara alleges that Nashua breached the contract by not making him whole through August, 2001.  If that were true, then the breach of which McNamara complains would be evident in the terms of the Stipulation, the Amendment, or, at the latest, in the November, 2001 letters from McNamara's attorney and Nashua to the New Hampshire Retirement System stating that McNamara's final date of employment was June 20, 2001.  McNamara gives no explanation for his delay in contacting the New Hampshire Retirement System to determine whether the amount of his benefit checks was correct,

---

v. Hartz Mtn. Assocs., 139 N.J. 532, 535, 655 A.2d 1379, 1381 (1995) (examining the variety of agreements that can be considered installment contracts, all of which involve periodic payments).

nor does he suggest that Nashua created any impediment to his efforts to do so.[4]

Regardless of when McNamara actually discovered the alleged breach, it could reasonably have been discovered at the time it occurred.  Therefore the "discovery rule" exception in RSA 508:4 does not apply; the limitations period for the breach of contract claim began, at the latest, in November, 2001.  McNamara did not bring his breach of contract claim until August, 2008, so it is time-barred.


    3.    <u>Breach of the Covenant of Good Faith and Fair Dealing</u>

McNamara alleges in his complaint that Nashua violated the covenant of good faith and fair dealing implied in the Stipulation.  He alleges the covenant was violated by Nashua's "failure to pay [him] all benefits due as set forth [in the complaint]."  Compl. at ¶ 26.  McNamara asserts that Nashua's obligation to make him whole includes paying his wages until August, 2001.  <u>See</u> <u>id.</u> at ¶ 10A.

---

[4] Indeed, his attorney contacted the New Hampshire Retirement System on March 14, 2006, and by May 31, 2006, she had already received McNamara's file, reviewed it, and contacted an attorney for the Retirement System.  <u>See</u> Pl.'s Memo., O'Brien Aff., Exhs. 1 & 2.

16

Under McNamara's theory, the breach of the covenant of good faith and fair dealing occurred at the time of the Amendment. The Stipulation indicated that McNamara would be made whole up to and including February 4, 2001. It was accompanied by a breakdown of the $20,272.12 check, which showed that McNamara was being paid through January 27, 2001, plus an additional week and a day. Deft.'s Memo., Exh. A, Attachment 8. The Amendment did not change the date through which McNamara would be made whole, but it did state that "[t]he parties agree that payments made to Lt. McNamara under the stipulation cover the time period during the three weeks preceding June 20, 2001." Thus, McNamara knew or, in the exercise of reasonable diligence should have known, of the grounds for this claim as of October 30, 2001, when he signed the Amendment. This claim is time-barred.

4. Fraudulent Inducement

McNamara's final claim is for fraudulent inducement. He alleges that Nashua fraudulently induced him to sign his General Release, "by promising [him] that he would be made whole and that he would be paid all wages up through the termination of his employment and all retirement benefits." Compl. at ¶ 30.

With regard to his claim for fraudulent inducement, the discovery rule in RSA 508:4 applies. Under that rule, the

17

limitations period starts when "the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, the injury and its causal relationship to the act or omission complained of."

The discovery rule, however, does not save the claim. The acts of which McNamara complains are the promises made to him by Nashua in order to get him to sign his General Release. Because he signed his Release on May 10, 2001, the acts at issue necessarily occurred on or before that date. Unlike the two claims discussed above, however, the basis for McNamara's claim for fraudulent inducement could not reasonably have been discovered when the acts occurred.

McNamara should have discovered his injury and its relationship to the act of which he complains in August, 2001, or November, 2001 at the latest. McNamara states that he discovered the injury in May, 2006, when his attorney reviewed his New Hampshire Retirement System file. He received his first retirement check in August, 2001, however. If the amount was too low, as McNamara alleges, then he should have, in the exercise of reasonable diligence, discovered the problem sometime shortly after the receipt of that check. Moreover, his attorney and Nashua both informed the New Hampshire Retirement System in November, 2001, that his "retirement effective date" was June 20,

2001.  If this was incorrect, McNamara should have recognized the problem in November, 2001.  As discussed above, McNamara does not allege that Nashua prevented him from inquiring about how his benefits were calculated or that it concealed that information.

McNamara brought his fraudulent concealment claim in August, 2008, but he reasonably should have discovered the basis for his claim long before August, 2005.  Therefore, the claim is time-barred.

B.   Other Grounds for Summary Judgment

As previously noted, because the statute of limitations bars McNamara's claims, it is unnecessary to reach the other grounds raised in support of the summary judgment motion.

Conclusion

For the foregoing reasons, Nashua's motion to strike (document no. 16) is denied.  McNamara's motion for leave to file a surreply (document no. 19) is granted, and his surreply was considered.  Nashua's motion for summary judgment (document no.

19

9) is granted. The clerk of court shall enter judgment accordingly and close the case.

    SO ORDERED.

                                    Joseph A. DiClerico, Jr.
                                    United States District Judge

February 9, 2010

cc:   Charles P. Bauer, Esquire
      Jennifer A. O'Brien, Esquire